and Pete Tehut of America. We have Mr. Thomas Begg for the appellant, and we have Ms. Christine McClemmons, and I'm sorry I'm having trouble deciphering your writing. It sure doesn't look like Miller, but anyway, nice to have you all here. You can proceed when you're prepared to, Mr. Begg. May it please the court, counsel. My name is Thomas Begg, and I represent Amanda Berrett in this matter. The factual record of this case, as the briefs note, is hotly contested. A relevant note to what we're here today on is two more major issues and one minor issue. The first of the two major issues is, in essence, it is a 2-615 motion to dismiss concerning negligence counts against the defendant Clarence Jackson. The second major issue is some summary judgment proceedings, and the minor issue concerns a discovery matter. Addressing the 2-615 motion to dismiss as it relates to Clarence Jackson, the record is undisputed that Clarence Jackson is a police officer. Nobody's going to tell you otherwise. The record is also undisputed that on the date of the incident in question in this case, Clarence Jackson was on duty and he was dispatched to the scene where the incident we're arguing about took place. There's not going to be any dispute about that. My client, Amanda Berrett, alleges that Mr. Jackson, in relevant part, essentially jerked a door out of her hand and injured her, tore a part of her shoulder and damaged it requiring surgery, physical therapy, and other treatment. Mr. Jackson denies that. The first two counts in the current operative complaint plead negligence against Mr. Jackson, Officer Jackson. The circuit court dismissed both counts pursuant to the Local Governmental Tort Immunity Act. The argument of Mr. Jackson was because he is a police officer that was on duty, he is immune and pursued for negligence. While the Local Governmental Tort Immunity Act does provide Mr. Jackson with a great deal of immunity, it does not provide him immunity merely for being on the clock. You don't think it matters that he was actually called to the Pizza Hut for the very substantive matter of the base of the lawsuit? No, he wasn't. If you look in the record, the police records reveal that the reason Mr. Jackson was called to the restaurant did not have anything to do with my client being there or her partner being there. Was it a 911 call? What is mentioned in the 911 call? The fact that my client's client is alleged to have stolen some money and that they want to file a report. That's what's in the police records. Are you saying the 911 call, the Pizza Hut call the police to report a theft? To report a theft that took place weeks, months, days, sometime in the past. It wasn't about a possible disturbance, disorderly conduct going on there then? If you look at the police records, no. Now, Pizza Hut's employees say that the reason they called was... People don't ordinarily call 911 to report a theft that occurred weeks before, do they? I agree with you. They ordinarily don't. But you're saying that's what they did in this case? That's what they did in this case if you believe the records from the Troy, Illinois Police Department. You're saying that they wanted to file a police report related to this theft that occurred. Is that what I... That's what the records seem to indicate, yes. And they called 911. Wouldn't that be actually against the law, I think, to utilize 911 for that? It probably would, but that's not my job in life to enforce that law. Right. I understand that. But is that what Pizza Hut has said happened? Pizza Hut claims that they called the police. Karlyn Danrod, who's the Pizza Hut manager, said, if I remember correctly, claims she called complaining about my client and her partner not letting her do her job. That's not what the records from the police department indicate. Was there something about picking up a check, maybe, or a paycheck? Yes. My client was there for a termination hearing. My client's client was there for a termination hearing. And she was there to represent him. In the course of that, it was requested that he be given his last check. And there was a dispute about whether or not Karlyn Danrod, the Pizza Hut manager, would be allowed to meet with, speak to, and have my client's client sign things outside of my client's presence. And was the call made after the dispute arose? Yes. I think the record does reflect that. So maybe that was the purpose of the call to 911, this dispute. Well, the record is so that a reasonable jury might infer that. A reasonable jury might infer that the police records are accurate. There's contradictory evidence in the record. Well, okay, regardless of that, the police officer did come at the behest of the Pizza Hut manager's request involving something to do with either this disturbance or a theft. And so he's in the course of doing his police work. He's not there to get a cup of coffee. I agree that he was not there merely to get a cup of coffee. I agree that he was on the clock, and I agree that he was… But, I mean, he could be on the clock and get the cup of coffee at a mansion. Sure. I mean, he's there to investigate something. We don't know exactly which way it goes. According to his testimony, Officer Jackson's testimony, the only reason he was there was to keep the peace. Isn't that a good part of their job? But that's not executing or enforcing the law, which is the critical test for Section 2-202 immunity. If you're not executing or enforcing the law, you're not entitled to immunity under Section 2-202. And you're saying keeping the peace is not doing either of those? He said he was keeping the peace through his presence. A police officer merely standing there is not executing or enforcing anything. Well, didn't he actually ask them to leave at one point? And they left, yes. And wouldn't that be considered executing or enforcing the law if they're asked to leave a private property by the person who has the authority to determine whether or not they want them to remain there? Except when he was asked in the deposition what law were you executing or enforcing, he couldn't articulate one. All he could say is he was there to keep the peace through his presence, and the pleadings in at least one of the two negligence counts affirmatively plead that he was not executing or enforcing the law. And since on the negligence counts we're at a 2-615 stage, that fact is taken as true. Now, a fact finder at a trial may agree or disagree, but at its 2-615 stage, this court must presume that fact is true. Is a police officer who breaks up a fight enforcing the law? Probably. Is a police officer who through his presence stops a fight enforcing the law? Stops a fight that already started. Prevents a fight from starting. I don't believe so, no. Because in order to enforce the law, there must ipso facto at least be some sort of violation of the law. And the fact that two people might potentially in the future commit a violation of the law is not executing or enforcing the law. I'm reminded of the movie Minority Report. We don't enforce future crimes. If he comes in and they're yelling at each other, and he steps between them and says, okay, calm down, you leave, isn't that enforcing the law? I'm not aware of any crime against yelling at somebody, all things being equal. Matter of fact, I think we have a first minute protection within certain limits to argue with people. Well, except in this particular instance, didn't the Pizza Hut manager or whoever asked the attorney to leave or not be in the presence of, I guess, their conversations regarding the discharge of the check and the attorney, I guess, assumed that said, no, I'm going to remain with my client, at which time they asked them to leave and apparently they refused and that's why the police were called? The record has conflicting stories. It is my client's story, version of events, that they were not asked to leave until after Officer Jackson had arrived and the impetus for them being asked to leave was Officer Jackson looking at Carla Dameron, the manager for pizza, and said, do you want them to leave? She says, yes, and Officer Jackson tells them to leave at that point. It is my client's testimony that prior to that event, they were never asked to leave. And the Pizza Hut restaurant was not closed at this time. It was open, serving customers. In fact, my client was previously offered, I believe she accepted a soda from the Pizza Hut. So it's not like they were told to leave and didn't leave. The first time they were asked to leave is when Officer Jackson initiated the question to Carla Dameron, do you want them to leave? As noted, there are two different negligence counts. The first of which does not plead, or one of which, I don't know necessarily if it's the first of which, does not plead the lack of execution or enforcement. The second of which does plead the lack of execution or enforcement of the law. And thus, as I noted before, under 615 standard, that motion to dismiss them at that point should have been denied. I would also note that defendants raises a section 2-402 defense under the Tort Immunity Act, which applies to the inadequate application of police services. There is no allegation that Troy or Officer Jackson was inadequate in their police services. So section 402 simply doesn't apply. All the cases cited on 402 have to do with third parties injuring the plaintiff in the case, and the police department or police officer being sued for that circumstance. In this case, we're alleging Officer Jackson intentionally or negligently, as the case may be, injured my client. The second issue is the summary judgment motions. There are two defendants. The negligence issues that we discussed only apply to Defendant Jackson. That left a willful and wanton count against Clarence Jackson, the police officer, and a negligence count against Pizza Hut, the property owner. My client alleged that Officer Jackson jerked the door out of her hand, as previously alleged.  Judge Ruth, District Court, found that my client's version of the events, while it may constitute negligence, and I agree that it's rational and the fact-finding jury might find that it might constitute negligence, he found as a matter of law it could only constitute negligence if the fact-finder believed it, and therefore on summary judgment dismissed the willful and wanton counts. That disregarded the law on summary judgment. It was not the place of the District Court to weigh the evidence, find out or determine whether he believed the evidence, what he predicted a fact-finder, the jury, might do. His role was to simply find out whether or not there was a dispute in the jury. He didn't weigh the evidence, did he? He determined that there was no evidence. At the time of the motion for summary judgments before him, he found no evidence presented of willful and wanton conduct. That's not weighing, is it? Well, it is weighing in the sense that he disregarded what my client's evidence was. How was the officer willful or wanton? What evidence shows this conduct to be intentional? My client's testimony was that he jerked the door out of her hands and walked away. That, by itself, a reasonable fact-finder could find as willful and wanton. People don't just jerk doors closed out of people's hands, all things being, Officer Jackson, according to my client's testimony, gave her a dirty look, told her to scram, quote-unquote. All of which conveys a negative attitude towards my client. Now, those things did not occur at the time the door was pulled, right? Immediately prior to the door being closed. That was during the process of him telling you to leave, right? Yes. Well, I think the record, essentially the record reveals the time period involved here. I'm very safe in saying it's less than a minute. It's probably less than 30 seconds. Ma'am, but you're not saying that he was saying scram as he jerked the door. I don't. Or that he was giving a dirty look as he jerked the door because she testified that she wasn't looking at him when he jerked the door. Correct. The record shows that my client did not see Officer Jackson as he pulled the door shut. So, of course, my client wouldn't have been able to see him. In fact, she has an alternative theory about the door and the vacuum suction thing. Officer Jackson denies touching the door at the same time as my client. And she didn't see him touch the door. So, is it fair to say that it would be speculative that he did jerk the door shut? I don't believe it would be speculative. I think it would be a rational explanation of what happened. Doors simply don't move by themselves, all things being equal. I mean, an inanimate object does not move unless worked upon by an unbalanced force. It's basic physics. Officer Jackson, according to my client, was following her out the door. She held the door open for him, turned around, and the next thing she knows, the door has been pulled out of her arm. A reasonable fact finder can infer that Clarence Jackson, the person who was right behind her, according to her testimony, is the one who moved the door. Now, admittedly, there's a dispute as to whether or not he was doing that, but this is at the summary judgment stage. It's not this court or the trial court's or the trial judge's role to evaluate that evidence and believe some, disbelieve some. That's the jury's role, the fact finder's role. So what evidence would you then submit that it was willful and wanton or intentional if she never saw him touch the door? The fact that she never saw him touch the door doesn't necessarily go to negligence or willful and wanton as it does to whether or not he is the force that moved the door. But presuming that he is the force that moved the door, how would you then get to that next level that he jerked it in such a way that was in reckless disregard or intentional? Because it wasn't a light tugging on the door. It was a sudden, sharp jerk of the door. If Clarence Jackson had simply grabbed the door and slowly moved it, my client wouldn't have been injured. Instead, the door was ripped out of her hands. So there's no negligence. It's either nothing or it's willful and wanton. I have a problem seeing in my own mind how it could be negligence. However, I'm not the fact finder. That's the role of the jury, which is the reason that negligence was pled in addition to willful and wanton conduct. Judge Ruth found that the facts, if true, were negligence. So at least one judge has found that the facts, if true, were negligence. The fact that I, as an attorney, have trouble seeing as a matter of fact that it might be negligence, I don't think that's either here nor there. And that's the role of the jury. But you've got to plead the cause of action you think is sustainable by the facts and the law, though, right? Yes, and I believe I've done that. And you're saying you don't think that it's negligence? Why would you plead it then? The fact that I personally don't believe that it was negligence as opposed to willful and wanton is not the test. If I think that there's a reasonable likelihood that the facts may support that, I, as an attorney, have an obligation to plead that allegation. It's alternative pleas under our civil practice rules. Even though you don't believe that the facts support it and the law doesn't support it? I believe the law and the facts could support it. And as our civil practice rules indicate. But you don't think the facts would support it? I personally think that it was willful and wanton conduct. Okay, but what about negligence? You pled negligence. You don't think the facts support a negligence count? Me, personally, if I were the fact finder. You signed the complaint. I signed the complaint. Okay. If I were the fact finder, I would find that it was willful and wanton. However, I can see how a jury could find negligence. And as the Civil Practice Act states, we can plead alternative pleas, and a bad alternative is not a good alternative. Whether it's negligence or willful and wanton, wouldn't a component of this have to be that the officer was aware that she was even holding on to the door? Probably, yes. And what proof do you have of that? She wasn't looking his way. How do we know he wasn't going back in? He's looking the opposite direction. He doesn't even know she's… Officer Jackson has not raised any sort of defense that I'm aware of that he was unaware that my client was holding the door. But you understand what I'm saying, right? I understand what you said. Isn't his position that he didn't touch the door? That is his position. And Pizza Hut's witness, Carla Damron, testified under oath that he didn't touch the door. Madam, I appear to be out of time. Thank you, Mr. Major. Thank you. You have the opportunity to rebut. Ms. McClymonds. Sorry, I don't know why you have so much trouble with your name. Are you interested? May it please the Court, Counsel? My name is Christine McClymonds. I go by Kay. I represent Officer Jackson. I just want to clear a couple things up. There are some issues of fact. However, the issues of fact are not that he believes are hotly disputed. I don't believe are hotly disputed. The motion to dismiss counts one and two that was filed by Officer Jackson was actually a 619 motion. And I've got the motion in front of me. And the motion exactly refers to affidavits that were submitted by Clarence Jackson and William Brown, which is the Chief of Police. Both of the affidavits indicate that Officer Jackson was enforcing or disputed the law at all times relevant to the plaintiff's complaint. I also have in front of me a transcript of the 911 call, and that is in the record. The 911 call indicates that the Pizza Hut manager wants to have someone sent down to the Pizza Hut to document a theft that has happened. And she also says that there are some attorneys there, and she's trying to talk to them. And she's told them to leave, and they won't leave. And she indicates that she wants to have someone come down right away. She doesn't say tomorrow. She doesn't say that this happened yesterday. She wants someone to come down right away so she can make a report of this theft. And then she also references the fact that these people that she's asked to leave won't leave. So the officer was clearly executing or enforcing the law at the time of this incident. When the motion was actually ruled upon, the order specifically states that the affidavits of Clarence Brown and Clarence Jackson – I'm sorry, Officer Brown and Clarence Jackson were taken into account. So it's more or less a 2-619 motion that was filed. It was not a 2-619. 615? It was not a 2-615. I'm sorry. You're saying actually it was? You're saying literally it was? Or are we to presume that it was a 619? Well, it refers to affidavits in the motion. But, I mean, what is the caption? It does not say, in support there of states. And then it refers to the affidavits and incorporates those into the motion. Okay. So, and then the affidavits are also incorporated and referenced in the order as well in support of the motion that was made and granted by Judge Byron. And then that same motion was then granted by Judge Ruth. So if you look at the case law and executing and enforcing the law, this is not a case where he just was in uniform and responded to or transported to prison. He didn't do an ordinary police activity where he just, you know, answered the phone and transported a prisoner. He was not found to be ipso facto executing and enforcing the law because he was on duty at the time of the incident. There was more to it than that. He was called to the scene of a disturbance. It's his testimony, actually, later on, that he was called to the scene of a disturbance. The 911 call indicates that there's a disturbance going on at the local Pizza Hut. The case law that I've cited in my brief, none of it indicates that you've got to say a specific law that you're enforcing. If you are investigating an incident, you are held to be executing or enforcing the law. So there's nothing in the 911 call that says the word disturbance or anything like that? Well, it doesn't say disturbance. It's just there's some attorneys here, we want them to leave, and they won't leave. Right. Anyone would interpret that as a disturbance. Yeah. There's more discussion than that, actually. I know I misplaced it, but there's more going on than just there's some attorneys here. I mean, you could tell she was frazzled by the tone of her voice. And then she does testify, too. I did call the police because I had this incident going on that I needed some help on. She says that there's an employee here. They brought some lawyers with them because I wanted to terminate him for discount tickets, and he admitted he stole $5,000. They say the employee's name. He brought some attorneys so we could terminate him for stealing. He brought two attorneys. I told them to get away from us and let me do my job, and they won't do it. So please send somebody down here. Now, as far as the willful and wanted misconduct count, I think that's clear. He was there. He told the attorneys that they have to leave. And that even goes back to the negligence count. Once he got there, it's not like he just stood by and kept the peace. He told these people that they have to leave. And then there is some other testimony from the plaintiff's partner attorney that was actually with her that said, well, it looked like he even put his hand on his belt and threatened to – he thought he threatened to mace him. Our officer testified he was getting threatened to arrest him. So it's clear. He was there enforcing the law. These people don't have to continue to be at a pizza hut if they're creating a disturbance and are told to leave and aren't leaving. So now, going on to the willful and wanted count. There is that component here that Mr. Jackson, Officer Jackson, had to have some conscious disregard or consciously knew that he hurt or was going to hurt the plaintiff. But that isn't here. Now, the testimony is the plaintiff was leaving and there's one door that enters into another door. There's a little alcove in the middle. As the plaintiff was leaving, she supposedly pushed open the first door, then held it from the other side of the door. And she thought that after Officer Jackson told her to scram earlier, that she'd hold the door open for him. Well, she admits, though, that she did not see him. She was looking toward the outside door. So she did not see what Officer Jackson was doing. There are people who had a clear view of Officer Jackson that have testified that he was nowhere near that door. So there is no conscious disregard. The conscious component is not here. He testified in his deposition that he did not touch that door. He did not touch the door when the plaintiff was holding on to the door. So there cannot be a Wilf and Wanton action here on behalf of Officer Jackson if he didn't even know he was doing what the plaintiff alleges he did. And it's fair to point out the alternative theory that she doesn't know for sure if he even pulled it back when she's saying, well, it happened because of a vacuum effect between the doors. And she explained that in her deposition, that when one door closes and the other door opens, there's a vacuum effect that pulls the door away from the person holding on to it. Somehow, she explained that. So she cannot prove Wilf and Wanton, and she did not prove it. And the court was justified in granting our motion for a temporary judgment on that count because there was no contrary evidence that he knew if he actually did it. What he was doing. No one can testify as to what he was doing except for himself. So I would request that the court affirm the order on the motion to dismiss Count 1 and 2 and the order granting our motion for a summary judgment. Thank you. Thank you, Ms. McFarland. Mr. Miller? Thank you. May it please the court. Counsel, my name is Andy Miller. I represent Pizza Hut of America, Inc. There's really three basic reasons why the entry of summary judgment should be affirmed in this case. As I understand the theory against Pizza Hut, it's that the door that was involved in this incident was defective or unreasonably dangerous or unreasonably hazardous, whatever the language may be. The first basic reason why the summary judgment motion should be affirmed is most fundamentally that there simply is no evidence that there's anything wrong with the store. There's no evidence that the door is defective. There's no evidence in the record that it was defectively designed. There's no evidence, for instance, that it was defectively manufactured or defectively installed at the Pizza Hut. There's no evidence, for example, that it was defectively maintained at the store. Similarly, there's no proof in the record that, for example, Pizza Hut had been cited by the local municipality for a municipal code violation with respect to the door or a building code violation or both code violations. Prior to this day, there had never been any problems with the door. There had never been any complaints by employees. There had never been any complaints by customers. Presumably, hundreds of folks walked through those doors every day. Nobody had ever complained about this door. No one had ever been injured in a mishap involving the door. No customer, no employees. It was simply an ordinary door. There's no facts that suggest otherwise. It's an ordinary door. The second basis and the second reason that the summary judgment motion should be affirmed is that there's no – Pizza Hut didn't have a duty to protect the plaintiff from this alleged random misconduct of a third party. One of the cases that we cite is the Cobb case versus Mark IGA, which this court decided in that case. I think this case is very illustrative and instructive on this point. In that case, the plaintiff was a customer at a grocery store. She was injured. One young boy ran into her with a cart. She sued the grocery store. The grocery store filed a summary judgment. That was granted. This court, in analyzing the case and taking a look at the restatement of torts, stated – and I'm at 785 Northeast 2nd, 948 – stated that, quote, a plaintiff from the conduct of a third party. The prior incident must be sufficiently similar to put a defendant on notice that there's a reasonable probability that the acts of the third party are likely to cause physical harm to others. The court then went on and looked at the facts of that case and concluded that the plaintiff in that case did not present any evidence of previous incidents similar to what had happened in that case. And the court went on to say that in order for a plaintiff to establish a reasonable foreseeability for the purpose of proving the existence of a legal duty, it's not sufficient to show that an occurrence was conceivable or merely possible. The occurrence must be, quote, objectively reasonable to expect. That's the fundamental flaw with the plaintiff's case here, is that there is no evidence of any previous similar incidents like this. There are no facts showing that Pizza Hut should have reasonably anticipated something like this might happen. There's nothing that suggests that it was objectively reasonable to expect facts like this to occur. So the second basic reason that the summary judgment motion should be affirmed is that Pizza Hut didn't have a duty to protect the plaintiff from this random conduct of the third party. Finally, the third basic reason has to do with notice, as we identify in our brief. Notice is a fundamental element of a plaintiff's case theory. If plaintiff were, for argument's sake, able to identify what was defective about this door, there's no evidence that anyone from Pizza Hut had actual notice of this alleged defect. There were employee depositions taken in the case, and no employees testified regarding actual knowledge of any problems with the door. Similarly, because plaintiff can't identify what the defect is, if he had been able to articulate what the defect was, he hasn't been able to identify when that defect was created. In other words, the plaintiff can't make the argument that it was there for an amount of time long enough that Pizza Hut should have known of its presence, meaning constructive notice. So because the plaintiff has no evidence regarding the fundamental and requisite element of notice, that in and of itself provides a basis to affirm summary judgment. Mr. Miller, what were the affidavits that Pizza Hut filed? Pizza Hut did not file an affidavit. The plaintiff herself filed an affidavit, which we objected to, which essentially offered expert testimony that this door was defective. Who was the expert testimony offered by? A person? There was an individual? The plaintiff herself. The plaintiff signed an affidavit in response to our summary judgment motion that said that she went and looked at a bunch of doors around the area and that the doors that she looked at were different than the door of the Pizza Hut, and therefore our door must have been defective. There was no foundation to the affidavit, and I opposed it, and moved to strike it as having no foundation, among other problems. Did the court strike that? It was not stricken, but the motion for summary judgment was granted. But there is no expert testimony regarding the door, that it's defective or hazardous or dangerous or anything like that. Thank you, Mr. Miller. Thank you. Mr. Mank, you have the opportunity for rebuttal. Very briefly, as to the issue whether it's a 265 or a 2619 motion to file against Pizza Hut, I would note that even in the 2619 context, an affidavit attached to a 269 motion to dismiss cannot rebut or contradict an allegation of a complaint. That's the role of a summary judgment motion. So even if there's an affidavit attached to the motion, even if it is a 619 motion as opposed to a 615 motion, the allegation of the complaint, where it's expressly pled in one of the two negligence counts that Mr. Jackson was not executing or enforcing the law, trumps the affidavit in a motion to dismiss. It might not do so in a summary judgment motion, but it does in a motion to dismiss. Not to quibble too much about that, but on either 2615 or 2619, all well-pleaded factual allegations are taken as true. One could certainly argue that an allegation that he was not executing or enforcing the law was a legal conclusion. It was intended to be pled as a fact. It was a fact when it was asked to Mr. Jackson at his deposition. Matter of fact, it's, in essence, the quotation of the answer of Mr. Jackson at a deposition when the complaint was repled later in the case after Mr. Jackson's deposition. It aren't necessarily my words or my client's words. That's Mr. Jackson's testimony of what took place. As concerns counsel's argument that there was no evidence of anything that would have been wrong with the door, the only point on that that I would like to raise is that Mr. Jackson and the Pizza Hut employee Carla Dambach both testified that Clarence Jackson did not touch the door. If the door sharply and suddenly moved by itself or by a vacuum effect or by whatever other reason other than somebody jerking it shut, that is a dangerous door. A reasonable fact finder could find the fact that it moved without apparent outside force to be a dangerous condition. And unless there are any questions, thank you. Thank you. Thank you both, all, for your briefs and arguments. And we'll take the matter under advisement.